UNITED STATES BANKRUPTCY COURT                    **FOR PUBLICATION**
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------x
In re                                             Case No. 04-27013-CEC
                                                          04-27015-CEC
GRACE INDUSTRIES, INC.,                           Jointly Administered

                         Debtor(s)                Chapter 11
----------------------------------------------------------x
ADMIRAL INSURANCE COMPANY,

                         Plaintiff,

          - against -                             Adversary Proceeding No. 05-1084

GRACE INDUSTRIES, INC.,

                         Defendant.
----------------------------------------------------------x


<u>DECISION ON MOTION FOR SUMMARY JUDGMENT</u>


APPEARANCE:

C. Nathan Dee                          Debra Ibarra Mayfield
Cullen and Dykman LLP                  Rymer, Moore, Jackson & Echols, P.C.
100 Quentin Roosevelt Blvd.            2801 Post Oak Blvd.
4th Floor                              Suite 250
Garden City, NY 11530                  Houston, TX 77056
Attorneys for Grace Industries, Inc.

                                       Meryl R. Lieberman
                                       Traub Eglin Lieberman Strauss LLP
                                       Mid-Westchester Executive Park
                                       Seven Skyline Drive
                                       Hawthorne, NY 10532

                         CARLA E. CRAIG
                    United States Bankruptcy Judge

This matter comes before the Court on the motion of defendant Grace Industries, Inc. ("Grace" or "debtor") seeking summary judgment dismissing this adversary proceeding. Plaintiff Admiral Insurance Company ("Admiral") has also moved for summary judgment. For the reasons set forth below, Grace's motion for summary judgment is granted and Admiral's motion for summary judgment is denied.

## Facts

The facts material to this motion are not in dispute.

Admiral issued to Grace an occurrence-based liability insurance policy (the "Policy"), which provided coverage to Grace during a one year policy period, from April 1, 2002 through April 1, 2003. The Policy's coverage expired prior to the commencement of this bankruptcy case on December 6, 2004.

Several provisions of the Policy are relevant to this motion. First of all, the Policy provides for a self-insured retention of $50,000 for each occurrence, as follows:

### SELF-INSURED RETENTION ENDORSEMENT
*    *    *

Our total liability for all damages will not exceed the limits of liability as stated in the declarations and will apply in excess of the insureds self-insured retention (the "retained limit"). The "retained limit" is the amount shown below, which you are obligated to pay, and only includes damages otherwise payable under the policy.

If the "retained limit" is subject to an annual aggregate, the aggregate amount shall be payable by the insured even if the policy is terminated prior to the expiration.

"Retained limit":    $50,000    Per Occurrence-Other than
Products and Completed Operations.

*    *    *

> Your bankruptcy, insolvency or inability to pay the "retained limit"
> shall not increase our obligations under this policy.

*    *    *

Second, the Policy provides for payment of an initial premium in the amount of $890,000.00, which was paid in full.  Admiral contends that it was entitled to an additional retrospective premium based upon an audit conducted in 2003, of which $289,000.00 has not been paid.

Third, the Policy provides for cancellation only by written notice, delivered or mailed 10 days before the effective date of cancellation (in case of cancellation for nonpayment of premium) or 30 days before the effective date of cancellation (in case of cancellation for any other reason).

Fourth, the Policy contains two provisions applicable in the event of the insured's bankruptcy.  The self-insured retention endorsement states that "[Grace's] bankruptcy, insolvency or inability to pay the "retained limit" shall not increase [Admiral's] obligations under this policy."  Subsection 1 of Section IV of the Policy provides, in accordance with applicable New York law, that the "[b]ankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part."  See NYCLS Ins. § 3420(2005).  The Policy also provides that the insured has a duty to "cooperate with [Admiral] in the investigation or settlement of the claim or defense against the 'suit'."

A number of actions have been brought against Grace by plaintiffs who claim to have been injured during the period covered by the Policy.  In several instances, the automatic stay pursuant to Section 362(a) of the Bankruptcy Code has been lifted, with Grace's consent, to

permit these plaintiffs to pursue their claims in state court, with the proviso that the plaintiffs

agree to limit their recovery, if any, to the proceeds of the debtor's available insurance coverage.

Admiral commenced this adversary proceeding seeking a declaratory judgment that (1)

the Policy terminated pre-petition as a result of Grace's failure to pay the full retrospective

premium that is claimed to be due; (2) Admiral has no duty to defend any actions brought against

Grace that would otherwise be covered by the Policy until the self-insured retention is exhausted;

(3) Admiral has no obligation to provide coverage because the debtor breached the Policy's

cooperation clause by consenting to the termination of the automatic stay to permit the personal

injury plaintiffs to pursue their claims in state court; and (4) Admiral has no obligation to provide

coverage because the Policy has not been assumed.

<u>Standard for Summary Judgment</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Bankr. P. 7056(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548,

91 L. Ed. 2d 265 (1986).  The court's function is not to resolve disputed issues of fact, but only to

determine whether there is a genuine issue to be tried.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  No genuine issue exists "unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If

the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." <u>Id.</u> at 249-50.

"If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994) (citation omitted). If the movant meets this initial burden, the nonmoving party must set forth specific facts that show triable issues and cannot rely on pleadings containing mere allegations or denials. Fed. R. Bankr. P. 7056(e); In re Jarrell, 251 B.R. 448, 450-451 (Bankr. S.D.N.Y. 2000) (citing Matsushita Elec. Indus, Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed.2d 265 (1986)). The non-moving party must show that there is more than a metaphysical doubt regarding the material fact. In re Jarrell, 251 B.R. at 450-451 (Bankr. S.D.N.Y. 2000) (citing Matsushita, 475 U.S. at 586-587).

Here, the material facts, as outlined above, are not in dispute.

<u>Discussion</u>

Admiral's declaratory judgment action is premised on the notion that Admiral has no obligation to provide any coverage unless and until the debtor performs all of its obligations under the Policy. This is an incorrect premise. Where, as in this case, an insured debtor has paid the initial premium in full, and the policy period has expired, the insurance policy is not an executory contract, despite continuing obligations on the part of the insured. In that event, the insured's failure to perform those continuing obligations does not excuse the insurer from being required to perform, but gives rise to an unsecured claim by the insurer for any damages incurred by reason of the debtor's breach of the policy. Put differently, courts interpreting Section 365 of the Bankruptcy Code have made it clear that, for the purposes of that provision, the debtor's payment of the initial policy premium constitutes substantial compliance with its contractual

obligations.  Am. Safety Indem. Co. v. Vanderveer Estates Holding, LLC (In re Vanderveer Estates Holding, LLC), 328 B.R. 18, 26 (Bankr. E.D.N.Y. 2005); Beloit Liquidating Trust v. United Ins. Co., 287 B.R. 904, 906 (N.D. Ill. 2002); Argonaut Ins. Co. v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.), 1995 WL 311764, at *3 (S.D.N.Y. 1995)("Courts considering insurance policies in which the policy periods have expired and the initial premiums have been paid routinely find that they are not executory contracts despite continuing obligations on the part of the insured."); In re Sudbury, Inc., 153 B.R. 776, 778 (Bankr. N.D. Ohio 1993); Firearms Import And Export Corp. v. United Capital Ins. Co., (In re Firearms Import and Export Corp.), 131 B.R. 1009, 1014 (Bankr. S.D. Fla. 1991)("[The insurer] . . .has already received the most material and substantial performance required under the Policies: the payment in full of over $1.4 million in premiums. At this point, a material breach of the Policies by [the insured debtor] . . . would not have relieved [the insurer] of its coverage obligations under the Policies; likewise, it cannot do so now, after bankruptcy, nor does it invoke the assumption and rejection provisions of §365."); Columbia Cas. Co. v. Fed. Press Co., (In re Fed, Press Co.), 104 B.R. 56, 65 (Bankr. N.D. Ind. 1989)).

This is so whether the continuing obligation of the bankrupt insured is the payment of a retrospective premium or the payment of defense or other costs within a deductible or a self-insured retention. See Beloit, 287 B.R. at 906 ("Since the payment of retrospective premiums is the only obligation remaining on [the debtor] and since the failure to pay these premiums would not excuse [the insurer's] performance (and, therefore, would not constitute a material breach) the contract is not executory under 11 U.S.C. §365."); Sudbury, 153 B.R. at 778 ("This Court . . . concludes that the Debtors' retrospective premium obligation does not make the Policies

executory contracts which may be assumed or rejected under section 365."); <u>Vanderveer</u>, 328

B.R. at 27 ("[The insurer] 'has at best a pre-petition claim for any defense costs it chooses to

expend.")(citing <u>Argonaut</u>, 1995 WL 311764, at *2).

    The district court explained the reason for this in <u>Argonaut</u>:

> By failing to defend claims within the $50,000 deductible, Ames
> may be breaching its contract with Argonaut. But, a post-petition
> breach of a contract executed pre-petition gives rise only to
> pre-petition liability. <u>In re Chateaugay Corp.</u>, 87 Bankr. 779, 796
> (S.D.N.Y. 1988). The bankruptcy judge was therefore correct in
> ruling that Argonaut has at best a pre-petition claim for any defense
> costs it chooses to expend. There is no doubt that a post-petition
> breach by a debtor may impose a burden on the other party to the
> contract because the law allows for compensation only in
> bankruptcy dollars. However, Argonaut's attempt to transform the
> unpleasant consequences it faces as a result of such a post-petition
> breach into a rewriting of the contract by the bankruptcy court is
> unavailing...[Further] the failure of the insured to perform those
> continuing obligations [including funding the defense costs within
> the self-insured retention] would not excuse the insurer from being
> required to perform and, consequently, that the Countryman
> definition of an executory contract would not be satisfied.

<u>Argonaut</u>, 1995 WL 311764, at *2.

To hold otherwise would permit an insurer to avoid its obligations under the insurance policy by

reason of the insured's bankruptcy, a result which is at odds with the terms of the Policy and with

applicable with New York law. As the district court explained in <u>Beloit</u>, "in the Bankruptcy

Clauses [of the policy there at issue] defendant has agreed that plaintiff's bankruptcy will not

relieve defendant of its obligations under the policies. Implicit in this agreement is the

understanding that failure to pay retrospective premiums due to the plaintiff's bankruptcy would

not excuse defendant from paying claims arising from occurrences during the pre-petition policy

coverage period." <u>Beloit</u>, 287 B.R. at 906.

For this reason, the debtor's failure to pay the retrospective premium claimed to be due, or failure to fund the costs of, or any awards resulting from, these personal injury actions to the extent of the self-insured retention amount, does not relieve Admiral of its obligation to pay claims under the Policy.  Contrary to Admiral's argument, this conclusion does not violate the term of the self-insured retention endorsement which states that "[Grace's] bankruptcy, insolvency or inability to pay the 'retained limit' shall not increase our obligations under this policy."  Admiral will not be required to pay the first $50,000 of any costs or recovery on a claim covered by the Policy.  Its obligations will be exactly what they would be in the absence of Grace's bankruptcy – to pay claims to the extent of the policy limits, and to the extent the claims exceed the amount of the self-insured retention.  It does not appear from the language of the self-insured retention that defense costs are, in fact, included in the retained limit: "The 'retained limit' is the amount shown below, which you are obligated to pay, and only includes damages otherwise payable under the policy"  (emphasis added).  Thus, it appears that Admiral's obligation to provide a defense is separate from the self-insured retention.

In any event, no additional obligation to defend claims is being imposed by reason of Grace's bankruptcy.  Admiral notes that an undefended claim can easily result in a judgment in excess of $50,000, and argues that, as a practical matter, it will have no alternative but to assume the defense of all claims, in order to limit its liability for amounts over the $50,000 self-insured retention.  Admiral argues that for this reason, the debtor's failure to defend claims within the self-insured retention will result in an increase in Admiral's obligations in violation of the terms of the Policy.  See Admiral Insurance Company's Response to Debtor's Motion for Summary Judge, ¶ 9.

But in defending claims within the self-insured retention limit, Admiral would be making a business decision that its best financial interests are served by doing so, even if it is not required to.  To be in this way put in the position of making a choice between the less financially undesirable of two alternatives is not the same thing as being legally compelled to make payment.  Admiral is not legally required to fund any claims within the self-insured retention.  If it chooses to defend claims that would fall within the retained limit, the choice will be voluntary, to protect its financial interests.  This does not constitute an increase of Admiral's obligations under the Policy.

Admiral makes two other arguments why it should not be required to make any payment under the Policy.  First, it argues that the Policy terminated pre-petition, when the debtor failed to pay the retrospective premium assessed by Admiral, because the nonpayment of the retrospective premium was a material breach of the Policy.

This argument flies in the face of the language of the Policy, which provides, at Section A, that Admiral "may cancel this policy by mailing or delivering to [Grace] written notice of cancellation at least . . . 10 days before the effective date of cancellation for the nonpayment of premium, or . . . 30 days before the effective date of cancellation if we cancel for any other reason."  Thus, the Policy, by its terms, did not terminate automatically.  Even in the case of nonpayment of a premium, written notice of cancellation was required in order to terminate the Policy.  Admiral does not contend that any cancellation in accordance with this notice provision occurred pre-petition.  This argument is therefore rejected.

Admiral also argues that it is relieved from liability because the debtor breached the Policy's cooperation clause by entering into stipulations with certain personal injury plaintiffs to

modify the automatic stay to permit their personal injury actions to go forward, where those

plaintiffs agreed to limit their recovery to available insurance.  This argument too must fail.  The

automatic stay does not shield issuers of liability insurance policies from making payments

which would otherwise be due under the policy by reason of the insured's bankruptcy.  The

purpose of the automatic stay is to protect property of the estate from being seized by individual

creditors, so that assets will be available for proper distribution to the creditor body.  In re New

Era, Inc., 135 F.3d 1206, 1210 (7th Cir. 1998) ("Nor would [the debtor's insurer] have had

standing to submit even a timely opposition to the lifting of the stay, since the stay is for the

protection of the debtor and its creditors").  Where, as here, the plaintiffs have agreed that they

will not seek any recovery from estate assets, there is no basis for continuing the automatic stay.

Put differently, where a plaintiff seeks relief from the stay to pursue a claim in another forum, the

interests or desires of the insurance company which provides coverage of the claim are not

considered in determining whether the stay should be lifted.  See In re Sonnax Industries, Inc.,

907 F.2d 1280 (2d Cir. 1990) (setting forth the factors to be considered in determining whether to

modify the automatic stay to permit an action against the debtor to proceed in another forum).

Under these circumstances, a failure by the debtor to inform Admiral that it had stipulated to

permit these actions to go forward in state court cannot constitute a failure to "cooperate . . . in

the investigation or settlement of the claim or defense against the 'suit'."

Admiral also argues that the debtor breached the cooperation clause by failing to notify it

of a claim by one Marquette Norman which allegedly arose within the policy period.  The debtor

asserts that this claim is covered by a policy issued by another insurer, Zurich, which is defending

the action, and has submitted a letter from that insurer stating that it is taking responsibility for

the defense of the action.  Accordingly, this does not provide any basis for denying Grace's

summary judgment motion.

Conclusion

For all of the foregoing reasons, Admiral's motion for summary judgment is denied, and

Grace's motion for summary judgment is granted.  Grace is directed to settle an appropriate

order.

Dated: Brooklyn, NY
        March 27, 2006

                                                        \s\*Carla E. Craig*
                                                        CARLA E. CRAIG
                                                        United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                          Case No. 04-27013-CEC
                                                                        04-27015-CEC
GRACE INDUSTRIES, INC.,                                         Jointly Administered
                              Debtor(s)                         Chapter 11
------------------------------------------------------------x
ADMIRAL INSURANCE COMPANY,
                              Plaintiff,
              - against -                                       Adversary Proceeding No. 05-1084


GRACE INDUSTRIES, INC.,
                              Defendant.
------------------------------------------------------------x

## MAILING CERTIFICATE

     I, Vivian Greene, Judicial Assistant to the Honorable Carla E. Craig, hereby affirm that on March 27, 2006 a copy of a Decision was delivered to the parties named below by United States Postal Service first class mail, telecommunication, facsimile or any other delivery method, as follows:

C. Nathan Dee                                Meryl R. Lieberman
Cullen and Dykman LLP                        Traub Eglin Lieberman Strauss LLP
100 Quentin Roosevelt Blvd.                  Mid-Westchester Executive Park
4th Floor                                    Seven Skyline Drive
Garden City, NY 11530                        Hawthorne, NY 10532
Attorneys for Grace Industries, Inc.

Debra Ibarra Mayfield
Rymer, Moore, Jackson & Echols, P.C.
2801 Post Oak Blvd.
Suite 250
Houston, TX 77056


Dated: Brooklyn, NY
     March 27, 2006


                                             *s/Vivian Greene*
                                             Vivian Greene